IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-02772-RBJ-BNB

RUBEN ARAGON,

Plaintiff,

v.

KERRY BARONI,
CHRISTINE STERGEON,
VALERIE EGLEY, and
DANIEL R. MEYER,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the defendants' **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)** [Doc. #10, filed 12/20/2013] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific

allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II.  BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the Arkansas Valley Correctional Facility. He filed his Prisoner Complaint on October 11, 2013 [Doc. #1] (the "Complaint"). At all times pertinent to the allegations of the Complaint, the plaintiff was housed at the Buena Vista Correctional Facility ("BVCF"). *Complaint*, p. 4. The Complaint contains the following allegations:

1.  In March 2011, the plaintiff requested medical treatment for a fungus growing on three fingers of his left hand. The fingers periodically get infected and cause severe pain and discomfort. *Complaint*, p. 4.

2.  The doctor told the plaintiff to use Vicks VapoRub on his nails and to follow up at the next facility. Upon arrival to BVCF, the plaintiff requested medical treatment. For the next year, the medical department continued to recommend Vicks VapoRub, which did not help. For a short while, the plaintiff was given "a lichen-planus medication." His nails were "finally removed" on February 7, 2012. Id.

3.  On August 22, 2012, the plaintiff showed the doctor his nails. One had grown back normal. The other two were becoming infected again. The doctor told him to continue with the Vicks VapoRub treatment for another six months. Id.

4.  On January 30, 2013, the plaintiff requested treatment again. He explained that his nails were infected again, he was in constant pain, and his hand was hurting "for work and recreation and emotionally taking a toll on me at night not being able to sleep well." An appointment was made for February 13, 2013. Id. at pp. 4-5.

5.  The plaintiff was "flat out denied treatment by P.A. Stergeon." He was told to use an

emery board and continue with the Vicks VapoRub. She made fun of him by advising him to quit using his hand if it hurts. Id. at p. 5.

6. "During the course of me trying to have my medical condition treated, by filing numerous sick call requests, grievances, complaints, and kites," the BVCF medical and administrative staff "retaliated against me in various ways." Money was deducted from the plaintiff's account for unauthorized medical co-pays; he was double charged for the same visit on many occasions; his request for a refund was denied, and he had to file grievances to get the refund; the medical department failed to respond to other serious medical requests "like a MERCA outbreak infection"; he was denied or delayed access to the optometrist; he was provided "frivolous answers" to his grievances; he had to wait over four months to schedule a doctor's appointment for a throat infection; he was not allowed to see a doctor; Physician Assistants and nurses were allowed to sign off on his medical visits; his grievances were altered; "the mailroom not willing to certify my letter to the Attorney General and not delivering my mail as addressed to the Inspector General"; and medical appointments were cancelled "at the last minute." Id. at pp. 5-6.

7. The plaintiff wrote to the Warden for help and requested that pictures be taken of his fingers. The pictures were taken of his hand, but "upon seeing the severity of my infected fingers," defendant Baroni "had and/or ordered the pictures destroyed/deleted." The pictures were "key evidence in a pending civil action." Id. at p. 6.

8. The plaintiff requested to speak with Internal Affairs and "C.I.D." He filed an affidavit with the Chaffee County District Attorney's office and has requested to speak to the Attorney General's office, but to no avail. Id.

9. The BVCF medical staff continues to recommend the use of Vicks VapoRub to other inmates for treatment of nail fungus. Id. at pp. 6-7.

The plaintiff asserts four claims for violation of his Eighth and Fourteenth Amendment rights. Claim One is against Kerry Baroni, BVCF Medical Administrator, for denying his Step 2 grievance and "ordering and/or agreeing to have those pictures destroyed/deleted." Id. at pp. 8-9.
Claim Two is against Christine Stergeon, a BVCF Physician's Assistant, for denying "medical treatment or access to a doctor; and for making "fun of my pain by advising me not to use my hand if it hurts." Id. at p. 10. Claim Three is against Valerie Egley, a nurse at BVCF, for retaliating against the plaintiff for filing law suits and grievances. Id. at pp. 11-12. Claim Four is against Daniel Meyer, a DOC Physician Assistant, for his treatment of the infection and because he "ordered and/or had the pictures destroyed deleted." Id. at p. 13.[1]

The plaintiff seeks injunctive relief in the form of immediate medical treatment and "that a pair of gloves be provided every six months for free for the next five years." He also requests a declaration that the defendants' acts and omissions violate his constitutional rights. Finally, he requests compensatory, punitive, and nominal damages in the amount of $36,700.00. Id. at p. 16.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

---

[1]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A. Official Capacity Claims: Eleventh Amendment Immunity

The defendants assert that they are entitled to Eleventh Amendment immunity. *Motion*, pp. 4-5. Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). The defendants' assertion of Eleventh Amendment immunity is a facial challenge to the Complaint's allegations. Therefore, I accept the allegations of the Complaint as true. Holt, 46 F.3d at 1003.

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06. Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The plaintiff alleges that the defendants are employed by the DOC. *Complaint*, pp. 2-3. The DOC is an agency or subdivision of the State of Colorado. Consequently, a suit against the defendants in their official capacities is a suit against the state. Therefore, the Motion should be granted to the extent it seeks dismissal of all claims against defendants in their official capacities for retroactive monetary relief.

In addition, the plaintiff has not stated a plausible claim against any of the defendants in their official capacities. To establish a claim in an official capacity suit, a plaintiff must show

that "the entity's policy or custom . . . played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985).   The plaintiff does not provide any specific factual allegations to show that a policy or custom of BVCF caused the alleged constitutional and statutory violations.  The claims against the defendants in their official capacities for prospective injunctive relief should also be dismissed.

### B.  Claims for Declaratory and Injunctive Relief

The plaintiff's claims for declaratory and injunctive relief should also be dismissed because they are moot.  The Tenth Circuit Court of Appeals has stated:

> When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking declaratory and injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison or released from the prison system, courts are presented with a question of possible mootness.  Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief.  Because a prisoner's transfer or release signals the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him.
>
> However, where a prisoner brings a lawsuit challenging policies that apply in a generally uniform fashion throughout a prison system, courts have been disinclined to conclude that the prisoner's declaratory or injunctive claims are moot, even after he has been transferred to another prison in that system.  Critically, in determining that the transferred prisoners' claims for declaratory or injunctive relief were not moot, these courts have focused upon the fact that the prisoners had sued defendants who were actually situated to effectuate any prospective relief that the courts might see fit to grant— viz., that the prisoners had sued the director of the prison system or the prison system itself.  Conversely, these cases indicate that a transferred prisoner's challenge to

>   system-wide prison policies is moot where he seeks equitable relief
>   and only sues prison officials at the transferor institution—that is,
>   the institution where he was formerly incarcerated.

Jordan v. Sosa, 654 F.3d 1012, 1027-29 (10th Cir. 2011) (internal quotations and citations omitted).

The plaintiff is no longer incarcerated at BVCF; he now is incarcerated at the Arkansas Valley Correctional Facility. Therefore, he is no longer incarcerated at the defendants' place of employment. Any prospective declaratory or injunctive relief the court may order would have no effect on the defendants' behavior toward the plaintiff. Therefore, the claims for declaratory and injunctive relief should be dismissed as moot.

### C. Statute of Limitation

The defendants assert that the plaintiff's claims are barred by the statute of limitation. *Motion*, pp. 5-6. "While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. Statute of limitations questions may, therefore, be appropriately resolved on a Fed.R.Civ.P. 12(b) motion." Aldrich v. McColloch Properties, Inc., 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980) (citations omitted).

Actions asserted under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994). The appropriate statute of limitation for §1983 actions arising in Colorado is two years. Id. at 1266; Colo. Rev. Stat. § 13-80-102. Federal law rather than state law determines when a cause of action accrues. See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to

run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Id. at 969. "A civil rights action accrues when facts that would support a cause of action are or should be apparent." Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995).

The defendants argue that the statute of limitation bars the plaintiff's claims because he alleges that the defendants violated his constitutional rights beginning June 10, 2011 (the date of his transfer to BVCF). However, the plaintiff alleges that he *began treatment* for his infection at BVCF on June 10, 2011. His claims appear to be directed at acts and omissions occurring in 2013. The Motion should be denied insofar as its seeks dismissal of the plaintiff's claims as barred by the statute of limitation.

### D.  Individual Capacity Claims

#### 1.  Qualified Immunity

The defendants assert that they are entitled to qualified immunity. *Motion*, pp. 14-15. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional

right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[2]

### a. Personal Participation

Defendants Baroni and Meyer assert that the claims against them regarding their responses to grievances fail to state a claim upon which relief can be granted because the plaintiff does not allege that they personally participated in any of the actions or inactions which violated his constitutional rights. *Motion*, 6-7.

An individual cannot be held liable under section 1983 unless she caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order to hold a supervisor liable under section 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted). Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official. Id. at 1163.

Here, the plaintiff alleges that Kerry Baroni, BVCF Medical Administrator, was made aware of his medical need on March 7, 2013. "[S]he claimed to have reviewed my medical file

---

[2]The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

10

(history) and denied my step 2 grievance, therefore denying me medical treatment." *Complaint*, p. 8. The plaintiff cites to Exhibit A-2 to the Complaint, which is a grievance by the plaintiff wherein he requests to see a doctor for his infection.[3] Ms. Baroni responded to the grievance:

> Mr. Aragon, I have reviewed your medical file, kite history, pending appointments, and step 1 grievance. As stated in the Step 1 response, a medical appointment with a medical professional is pending and the appointment charge is correct. You had submitted a kite to be seen by medical when a follow up was not ordered by any medical professional. Prescribed treatments must come from a medical provider and can be discussed at your appointment.

The plaintiff also alleges that defendant Meyer was made aware of the plaintiff's serious medical need on May 23, 2013, "as part of a grievance resolution." *Complaint*, p. 13.

"[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). The Motion should be granted insofar as it seeks dismissal of the allegations against defendants Baroni and Meyer regarding any responses they made to the plaintiff's grievances.

### b. Eighth Amendment Claims

The defendants assert that the plaintiff fails to state a claim for violation of his Eighth Amendment rights. *Motion*, pp. 7-12. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring

---

[3] Written documents attached to the complaint are exhibits and are considered part of the complaint for consideration in a Rule 12(b)(6) dismissal. Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991).

that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834. The subjective component of a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The defendants argue that the plaintiff has failed to establish the objective component of his Eighth Amendment claim because a fungal infection in three fingernails is not a sufficiently serious medical need under the Eighth Amendment. *Motion*, p. 7.

In Gray v. Ghosh, 2013 WL 5497250, at *1 (N.D.Ill. Oct. 3, 2013), the district court determined that foot fungus was not a sufficiently serious medical need. The court stated "[a]s far as this court is aware, every court to have considered the question has held that a foot fungus (that is, athlete's foot) does not satisfy the objective component of an Eighth Amendment deliberate indifference claim." The court cited numerous cases which held that skin conditions, including fungal infections, do not meet the objective component: (Tsakonas v. Cicchi, 308 F.

App'x 628, 632 (3d Cir.2009) (holding that "eczema of the feet [and] athlete's foot" are not objectively serious under the Eighth Amendment); Smith v. Schwartz, 2011 WL 2115831, at *3 (S.D.Ill. May 26, 2011) ("Smith's allegations that he suffered chronic itching, athlete's foot, chafing, peeling skin, and a painful, infected rash on his buttocks due to an inability to shower and clean his cell while Pinckneyville was locked down do not show a serious medical condition"); Thompson v. Carlsen, 2010 WL 3584409, at * 1 (N.D.N.Y. Aug. 16, 2010) ("dry and cracked skin, and athlete's foot ... are not serious medical problems under Eighth Amendment standards"), report and rec. adopted, 2010 WL 3584396 (N.D.N.Y. Sep. 7, 2010); Walker v. Dart, 2010 WL 669448, at *4 (N.D.Ill. Feb. 19, 2010) ("Although uncomfortable, a foot fungus, or athlete's foot, is not a serious medical need or injury."); Patterson v. Kim, 2009 WL 2982753, at *8 (W.D.Mich. Sep. 14, 2009) ("Plaintiff's alleged ingrown toenail and foot fungus are not 'serious medical needs' sufficient to support the objective component of an Eighth Amendment claim"); Cox v. Hartshorn, 503 F.Supp.2d 1078, 1085 (C.D.Ill.2007) (holding that "[a] fungal foot rash" is not an objectively serious medical condition); Rush v. Schrubbe, 2007 WL 2686843, at *2 (E.D.Wis. Sept. 11, 2007) ("athlete's foot itself does not generally amount to an objectively serious medical condition"); Russell v. Ohio Adult Parole Auth., 2007 WL 129000, at *4 (S.D.Ohio Jan. 12, 2007) (same); Sanders v. Allen Cnty. Jail, 2006 WL 2578977, at *2 (N.D .Ind. Sept. 6, 2006) ("athlete's foot, another fungal infection for which there is a substantial risk at communal showers, is not a serious harm"); Rogers v. Allen Cnty. Jail, 2006 WL 1441092, *2 (N.D.Ind. May 25, 2006) (holding that "athlete's foot" does not "constitute a serious medical need"); Calhoun v. Thomas, 360 F.Supp.2d 1264, 1287 (M.D.Ala.2005) (holding that "athlete's foot" and "bleeding feet" do not satisfy the "first,

objective inquiry"); Davis v. Lawson, 2005 WL 2293752, at *3 (N.D.Ind. Sept. 19, 2005) ("Athlete's foot is simply not a serious medical need within the meaning of [the Eighth Amendment]"); Landfair v. Sheahan, 878 F.Supp. 1106, 1112 (N.D.Ill.1995) ("While no doubt uncomfortable, athlete's foot cannot be considered an injury serious enough to satisfy the objective component of [an Eighth Amendment deliberate indifference claim]"); see also Sledge v. Kooi, 564 F.3d 105, 107–08 (2d Cir.2009) (holding that eczema is not objectively serious under the Eighth Amendment).

The plaintiff's fungal infection in three fingernails is no more serious than the conditions considered in Gray. I agree with the defendants that the plaintiff's fungal infection does not meet the Eighth Amendment's objective component.

The defendants also argue that the plaintiff has failed to establish the subjective component of his Eighth Amendment claim. *Motion*, pp. 9-10.

The plaintiff alleges that before he was transferred to BVCF, he was told by a doctor to use Vicks VapoRub on his infected nails and to follow up at the next facility. When he arrived at BVCF, he requested medical treatment for his fungal infection, and unidentified medical personnel "continued recommending vapor rub to treat my infection with no results and for a short while experimented with a lichen-planus medication, but the infection was obvious and much persistence on my part to have my nails cured and my pain dealt with, my nails were finally removed on 2-7-2012." He further alleges that on August 22, 2012, he "stopped by the doctor's office to show her my nails, one had grown back normal, the other two were becoming infected again. She told me to continue with the vapor rub treatment for another 6 months, but about five months later on 1-30-2013, I requested medical treatment again. I explained in my

medical kite that my nails had become infected again.  That I was in constant pain, my hand was hurting, for work and recreation and emotionally taking a toll on me at night not being able to sleep well. [An] appointment was made for me on 2-13-2013." *Complaint*, pp. 4-5.  Thus far, the plaintiff's allegations do not implicate any of the defendants.  Moreover, the allegations demonstrate that the plaintiff was receiving medical care for his infection.

The plaintiff's remaining allegations regarding his medical care are against defendants Stergeon and Meyer.  He alleges that on February 13, 2013, Physician Assistant Stergeon "was aware of vapor rub being prescribed as a cure for my infection and prescribed a fingernail file and to continue vapor rub treatment, but would not schedule me to see the doctor."  She also "made fun of my pain by advising me not to use my hand if it hurts."  *Complaint*, p. 10.  It is clear from the plaintiff's allegations that Stergeon was not deliberately indifferent to the plaintiff's medical needs; she continued the vapor rub and provided him with a nail file.  To the extent the plaintiff thinks Stergeon should have referred him to a doctor, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999).

The plaintiff alleges that Physician Assistant Meyer inspected the plaintiff's infected fingers and prescribed an antibiotic for the swelling and infection; he also prescribed Tineacide, which had to be purchased from the canteen and is the most expensive medicine; and Meyer knew that Tineacide is not effective on nails. *Complaint*, p. 13.  These allegations do not demonstrate deliberate indifference.  To the contrary, Meyer actively treated the plaintiff's symptoms.  The plaintiff's disagreement with the treatment is not actionable.

The United States Supreme Court has stated:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 106 (1976).

At most, the plaintiff's allegations against Stergeon and Meyer point to negligence, which is insufficient to support an Eighth Amendment claim. The Motion should be denied insofar as it seeks dismissal of the Eighth Amendment claims against Stergeon and Meyer.

### c. Due Process Claims

The plaintiff claims that the defendants' actions also violated his due process rights. Where the Eighth Amendment "serves as the primary source of substantive protection" for an inmate's conditions of confinement, as here, the Due Process Clause affords "no greater protection than does the Cruel and Unusual Punishment Clause" of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 327 (1986). "[A]ctions which are protected under specific constitutional provisions should be analyzed under those provisions and not under the more generalized provisions of substantive due process." Berry v. City of Muskogee, Okl., 900 F.2d 1489, 1493 (10th Cir. 1990) (internal quotations omitted). The plaintiff's due process claims should be dismissed pursuant to Berry.

### d. Retaliation

Claim Three alleges that defendant Egley, a nurse at BVCF, retaliated against the

16

plaintiff for filing law suits and grievances. *Complaint*, pp. 11-12. The defendants assert that the plaintiff fails to state a claim for retaliation against Egley because his allegations are conclusory and unsupported by facts. *Motion*, pp. 12-13.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotations and citation omitted). The First Amendment protects the right to free speech and the right to petition the government for redress of grievances. U.S. Const. Amend. I. The filing of an administrative grievance is protected by the First Amendment. Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991). "This principle applies even if the action taken in retaliation would be otherwise permissible." Id. at 948.

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Poole v. County of Otero, 271 F.3d 955, 960 (10th Cir. 2001) *abrogated on other grounds by* Hartman v. Moore, 547 U.S. 250 (2006). An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." Peterson, 149 F.3d at 1144. Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." Id. (quotations and citation omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

The plaintiff alleges that Egley "on many occasions in retaliation for my numerous

17

complaints and grievances, and including my notice of intent, has over billed and re-charged for follow up visits and deducted money from my inmate account forcing me to file yet more grievances to have my money refunded." Egley also refused to timely answer "other serious medical sick call requests (like a MERCA outbreak) (a serious throat infection) or allowing me access to the optometrist, also scheduling numerous medical appointments for me only to cancel them at the last minute." *Complaint*, p. 11.

The plaintiff's conclusory allegations against defendant Egley are too tenuous to state a claim for retaliation. Indeed, the Complaint does not contain any specific facts from which to infer that defendant Egley had knowledge of any specific grievance or law suit.

### e.  Destruction of the Pictures

The plaintiff alleges that during his visit with Physician's Assistant Meyer, Meyer stated that he would not allow pictures to be taken. After being on the antibiotics for six days, the plaintiff was called to medical and told that Meyer had allowed the pictures to be taken. "Then upon reviewing the photos of my infected fingers, ordered and/or had the pictures destroyed deleted (according to Nurse Nold RN111 and Kerry Baroni) therefore destroying key evidence in a civil action." *Complaint*, p. 13. He further alleges that "upon seeing the severity of my infected fingers," defendant Barroni "had and/or ordered the pictures destroyed/deleted." The pictures were "key evidence in a pending civil action." Id. at p. 6.

Although destruction of "key evidence" in a "civil action" may create an evidentiary issue, it does not violate the constitution.[4] The plaintiff's claims regarding destruction of

---

[4] Here, destruction of pictures of the plaintiff's fungal infection is harmless because the plaintiff failed to state a claim for relief based on the fungal infection.

evidence should be dismissed.[5]

## IV. CONCLUSION

I respectfully RECOMMEND:

(1)   The defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Doc. #10] be GRANTED; and

(2)   This action count as a "prior occasion" for purposes of 28 U.S.C. § 1915(g).[6]

Dated May 28, 2014.

                                        BY THE COURT:

                                        s/ Boyd N. Boland
                                        United States Magistrate Judge

---

[5]Because I find that the plaintiff's claims should be dismissed, I do not address the defendants' remaining arguments.

[6]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).